Good morning, Your Honors. Mark Alpert, representing repellents, to clear my throat. Twenty-four years ago, the United States Supreme Court, in Pinell v. San Jose, was asked to address a question about a rent control ordinance. And that question was, can you have a rent control ordinance which, in effect, forces a private property owner to bear the burden of an affordable housing program? In that particular rent control ordinance in San Jose, there was a provision that permitted the rent-regulating body to take into account the hardship of the rent increase on the tenants in determining whether or not a rent increase should be granted. The Supreme Court, and this was a facial challenge, declined to reach the issue of whether this could be a taking. The Court found that it needed to see how this provision would be applied in the real world. The Court upheld the ordinance on a facial substantive due process challenge. In his dissent and concurring opinion, of course, Judge Bidey, or not Judge Bidey, excuse me, Judge Scalia, Justice Scalia, indicated that he was... We're often confused. I'll resist the temptation to make favorable comparisons, Your Honor. Justice Scalia was prepared to find that this ordinance was a taking. Essentially, the thrust of his analysis was, here you have a local government attempting to use a rent control to impose a burden of affordable housing on an individual property owner disproportionately. Of course, Justice Scalia cited the Armstrong case, which states that fundamental to the Fifth Amendment is that you should not impose a burden on an individual property owner that should be borne by the community as a whole. Here we sit, 24 years after, if you will,  and we still really do not have a decision from the United States Supreme Court or a Federal Circuit Court on this fundamental question that is really addressed to how can you apply rent control? Can you use it, in effect, as an affordable housing program? Wouldn't the appropriate vehicle have been to take this to the California Court of Appeal, then to the California Supreme Court, then to the United States Supreme Court, rather than come sideways to us after there was a determination that your client was getting a fair return? No, Your Honor, because first of all, the property owner has a right to have an effectuation of their rights under the Fifth Amendment of the United States Constitution. Here there was a determination in state court. Are you saying under no circumstances is anything like that entitled to res judicata? No, I'm not saying that at all, Your Honor. Why couldn't you have taken your issue cleanly to the California Court of Appeal? You'll lose. To the California Supreme Court, you'll lose. You take your Federal issue at that point to the Supreme Court. That's the appropriate way, rather than come sideways into the district court and turn the district court into an appellate court. Well, Your Honor. The writ of mandate. We tried to address this in the brief, Your Honor. The purpose of a fair return analysis, which is the subject of a petition for writ of administrative mandamus, is a far, far different issue than a takings question. So, in other words, we could have appealed the determination by the state court that there was a fair return. And made an issue out of the same issue you described for us earlier, on which you say there's no definitive holding in the last 24 years. No, we could not. You could not. Why not? We could not because those issues are not relevant for a determination of a fair return. Right. But you can raise them. Your argument is going to be that the fair rate of return doctrine comes out of substantive due process. It comes out of the regulated industries cases, like HOPE natural gas. And that a fair rate of return is different from a taking. That is, that they compensate different things at different rates. And all you've got to do is present that in California courts and say, under the takings clause, which California courts will consider and are bound by, you haven't given me just compensation under the Fifth Amendment. Well, this is where I disagree with you, Judge Bivey. We pointed out that California has adopted this procedure called a Kavanaugh adjustment. And essentially what California courts say is, you don't have a right to proceed on a takings claim until after you've adjudicated, and potentially until after you've adjudicated the right to whether you're earning a fair return. So what happens, and for all practical purposes, you bring your fair return petition and either you overturn it or you don't overturn it. We could not have proceeded. That's one of the thrusts of our argument as to why claim preclusion or, actually, claim preclusion doesn't apply in this case. It's because we didn't have the right to proceed with our takings claim, even under state law, until after there was an adjudication of a fair return. So the point is, and if you look at Gallin. But after Williamson, we can't do anything until after you've exhausted all of your state remedies. And then it turns out to be a little bit of a loop. It turns out to be race judicata in federal court, and you can't get any place. Well, that's true. We have many, many decisions, a couple of which I've participated in, and not always successfully, suggesting that Williamson is a huge bar to this and that you've really got to go to state court. Well, that's true. Williamson County has had that effect on occasion. But the Williamson County ripeness requirements, which you're getting to, the state compensation requirement, it is a prudential requirement. So there have been cases, including those in which we've cited in our briefs, in which the federal courts, the Ninth Circuit, has affirmed the right of a property owner to pursue a takings claim in federal court, even though there has not been the processing of an inverse condemnation claim under state court rules. We cite those cases. How do you distinguish the MHC case from the situation that we have in front of us? Very easily, Your Honor. Because if you look at the MHC case closely, the unfortunate thing about the case is that the claims were styled in terms of takings, substantive due process, et cetera, those kinds of causes of action. But what was very, very clear from the court's decision is that the issue they were deciding is this question of whether or not the property owner is earning a fair return. In other words, if you look at that case, basically what it says is we will not undertake a review of a case that is essentially asking us to second guess the state court's decision on whether this provides a fair return. But that's not what this case is about. In fact, this case assumes that there's a fair return provided. But if you look at page 1031 of the MHC question and put that together with footnote 13, which is on the following page on 1032, it looks like our decision in MHC has said fair rate of return is the applicable test for a takings claim. Now, whether I would agree with that at this point is now irrelevant because our panel seems to have said pretty clearly if you're getting a fair rate of return, there is no takings claim. Actually, Your Honor, I'd have to respectfully disagree with that for two reasons. Number one, the United States Supreme Court in L'Engle affirmed the fundamental principle that this difference between a takings claim and a substantive due process challenge. And in essence, a substantive due process challenge and a fair return challenge is a substantive due process questions the ability of the regulating body to enforce, in this case, rents at a given level. Again, I may agree with you, but it appears that we have pasted all of these things together and said whether it's substantive due process or equal protection or takings, they're all part of the piece, all part of this primary right, and the right is the right of fair return. Again, I'd have to disagree with you both on the grounds of the Supreme Court after this San Jose case in the L'Engle case reached a different conclusion, number one. And number two, the cases we cite in our brief, subsequent Ninth Circuit cases, affirm this distinction and basically point to the L'Engle case as clarifying that there's this distinction between a fair return substantive due process analysis and a takings analysis. And I think it would be useful in our briefs we talk about that, but I think first before you even get to this primary right question, you have to address the question of does claim preclusion apply under state court? If claim preclusion doesn't apply in state court, it doesn't matter whether the claims arise out of the same primary right. And what we point out in our briefs is that, of course, you follow state law, California state law, to decide whether or not there's claim preclusion. And the California Supreme Court and Hensler and Kavanaugh specifically affirm that you have this exception to the claim preclusion rules for a petition for writ of administrative mandamus. In other words, ordinarily, let's assume this was the same primary right. And under ordinary circumstances, under ordinary claims, you have to bring them all together. But California, in its wisdom, has decided there's an exception to this non-claim splitting rule. In Hensler, the California Supreme Court says, you don't have to bring your takings claim with your petition for writ of administrative mandamus. And then in Kavanaugh and the land, in the specific rent control context, the California Supreme Court goes further than that. It doesn't say it's not your option. It says you can't bring them. You can't bring them together. You first have to get your adjudication of your petition for writ of administrative mandamus. What's an England reservation? An England reservation is a notice provision that you can file in a state court action where if you believe that there's a risk that you are going to present accidentally or be forced to present federal claims for adjudication that makes clear to the state court that you're reserving your rights to bring that claim in federal court, to have that claim adjudicated in federal court. So you filed an England reservation as you pursued this matter in state courts? Certainly. We could have included a petition for writ of administrative mandamus, but it's not necessary. Of course, Judge Bybee pointed that out. So you knew that at the time, that that was available to you, and you opted not to use it? That's right, Your Honor, because there was no risk of putting... Did you use belt? Boy, I think you might have used belt and suspenders there. Perhaps you're right, Your Honor. Perhaps you're right that that would have been the wiser course to take, but the fact remains. There's no requirement to bring an England reservation on that context for two basic reasons. Number one, there was no risk of putting at issue in a petition for writ of administrative mandamus the federal constitutional claims. Second, as Judge Bybee recognized in the Los Altos case, there's no requirement to bring... to include this England reservation. It's... But you saw what happened when the district court brought that up. Well, certainly. The point we made, Your Honor, is if you apply an England reservation to, in effect, impose issue preclusion in this case, you're applying a federal procedural rule to determine claim preclusion in this case when claim preclusion is decided under state law. So, personally, I don't see how an England reservation is even relevant. Why would anyone ever do one, then, if it's a waste of time? There are many situations... Well, where England arose was in very unique circumstances where, the way it's described, there was a risk of exposing federal claims while you were adjudicating your state claims. And I think there's a quote that we included in our brief where... I can't recall the case where they basically say even the best lawyer in the heat of litigation when you're adjudicating these related state claims could accidentally put forward and adjudicate your federal constitutional claims. It's not a procedural penalty kind of a provision. It's there to essentially protect you if you accidentally, or if you accidentally, in essence, adjudicate federal claims through your state cause of action. It's not a... Your position is you couldn't have done that no matter what. Not on a petition for writ of administrative mandamus. I got it. So, I thought in our briefing we talked about the legal differences. You're down to 22 seconds. I don't know if you want to reserve some time, but if you do, you probably need to stop now. Okay. Thank you. I will reserve the time. Ms. Brown? Good morning, Your Honor. Rochelle Brown for the defendant, City of Oceanside. This case was properly dismissed by the federal district court on two grounds. The first was ripeness. The second was res judicata. I think the law of this circuit compels the conclusion that the district court was correct. The Ninth Circus' latest case dealing with the issue of ripeness in the context of a rent increase application, just like this case, was Colony Cove versus the City of Carson. And the plaintiff in that case had not sought just compensation in state court. And the Ninth Circuit held that the law of this circuit under the equity lifestyle case. We certainly understand the frustration that the plaintiffs have. They're forced by Williamson to go into state court. They try to get the adjustments and then want to come back to federal court to litigate their takings claim, and they can't do it. They come back to federal court, we declare the matter res judicata, and it's a loop. And they can't get out of the loop. Well, there are several things that the plaintiff could have done in this case. One, it could have made an England reservation to try to preserve its federal claims. I recognize that doesn't always work. The U.S. Supreme Court said in the San Remo Hotel case that it's more important to give full faith and credit to state court judgments than it is to ensure that every plaintiff can bring its claims in federal court. And I think that's quite apt in this case. A federal, notwithstanding that, an England reservation might have helped the plaintiff in this case, but they didn't do it. And the cases, the United Parcel Service case, the Lurie case, which are cited in our brief, clearly say that if you want to make an England reservation and try to preserve your federal claims, you must do something to put the state court on notice that that's your intent. And the United Parcel Service case said, well, you know, you could put a footnote on the first page of your brief and that would be sufficient. But there was nothing in this case. Counsel, do you agree that after our decision in MHC that our court has said that fair return is the measure for takings? That is, if you have been granted a fair return on your investment, then you do not have a takings claim. I think that there is language in MHC case that says that, the footnote that you refer to. There's also language in the Colony Cove case that suggests the same thing. And if you look at the U.S. Supreme Court decision in Duquesne lighting, the U.S. Supreme Court said if a fair return has been allowed, there is no constitutional injury. Now, of course, that's a question going to the merits. Was Duquesne lighting, was that a takings case? Takings was raised in that case. And it uses the language, denial of a fair return is a confiscatory taking. That language, the confiscatory language, is the one that comes out of the old regulated industries where the state has granted a monopoly to a power company or somebody else. And that's a very different situation. That's based on the due process clause. I understand that. If you, however, but it uses takings language. And if you look at California cases, federal cases, the cases sometimes do merge the two doctrines. Oh, I, there's confusion. That's what you mean. On that point, the California Supreme Court in Kavanaugh says, you know, you can look at it this way and you can look at it that way, but they still come down with fair return being the issue. That's kind of a, it's hard in a way to separate some of the merits arguments from the grounds on which this case was dismissed. But if we go back to rightness and race judicata, those are compelling. And on the race judicata issue, it's not true that the only issue in a petition for a mandate is whether there's a fair return. California Code of Civil Procedure Section 1094.5 requires a court on a mandate petition to inquire whether the respondent complied with all applicable law. That includes state and federal constitutional law. And if you look at this case and the complaint that was filed, the petition for writ of mandate, rather, that was filed in the state court, Dunnex raised not just, didn't just say, you need to give us a fair return. The complaint alleges violations of substantive due process, violations of procedural due process, violations of equal protection, and prays for a judgment that the denial of its rent increase application affected a regulatory taking of its property. It did raise all those issues. How can these not be ripe? Let's go to the other argument that these simply aren't ripe. They pursued a claim through the administrative process, then a writ of mandamus for a Kavanaugh adjustment. It sounds like it's ripe to me. Why isn't it ripe? Did they do that? I mean, what else could they have done? They're like two separate issues. One, was there a taking or some other constitutional violation? And the other is, did you seek just compensation? In the mandate petition, you can get a ruling on whether there was a constitutional violation. Then, if you haven't joined an inverse condemnation action, a damages action, you can bring a subsequent action for damages. In order for a case to be ripe, the property owner has to have sought just compensation in the state court. Dunnix never did that. Could have joined that claim with its petition for writ of mandate. Could have brought the inverse condemnation claim separately afterwards. It did not do that. Dunnix, of course, could have appealed the decision of the state trial court to the California Court of Appeal, and as you suggested, sought review in the California Supreme Court. If they brought an action for inverse condemnation, that is California's equivalent of the takings clause. Is that right? Right. Or is it something else? Well, yes. But it is the primary vehicle for obtaining just compensation. It is separate. Right. If you bring an inverse condemnation action, can you get something other than a fair rate of return in California? Well, there is frankly... You get something greater than a fair rate of return. No. That's what you get. If we were going to go to the merits of this case, which you can do if you choose, I would say no. If you are limited to a fair rate of return. That if you're earning a fair rate of return. You're out. And you have full possession of your property and you're using it for the use that you chose, and you're earning a fair return on it, yes, I would say even under Penn Central. So then it's right because that's what they went after. No, because... This is the essence of the argument against the takings clause that just compensation and fair rate of return are two different economic measures. Right. They may be the same in a particular case, but in another case they may not be the same. And as long as under California law they are limited to a fair rate of return... There's no California case that says that. That's why I just asked you about the inverse condemnation. I understood you to tell me that you were... I'm saying that the inverse condemnation, ordinarily you would seek a judgment that there's been some constitutional violation. What's the remedy? The remedy is, I mean, depending on the context and the particular violation, is invalidation of the regulation. And in the rent control context, also to have a proceeding whereby you can get... A fair rate of return. A rent increase that's going to give you a fair rate of return, not just in the future, but going back. All right. But no one to my knowledge has brought in the California courts a case that says that you can't make the claim. McDonough's is making in this claim that you can still have a taking, even if you're getting a fair return. I think that was Judge Trott's point to appellants, that that's what they should have done was pursue this in the California courts. They should have appealed.  They should have appealed to the California Supreme Court to have sought cert in the U.S. Supreme Court. They also could have filed a separate inverse condemnation action after the petition for writ of mandate, although I think the appeal procedure would have been the proper one. But going back to the race judicata point, since they could have raised all these claims in the state court, the judgment that they allowed to become final is race judicata under California law as to everything that was raised or could have been raised. Therefore, it is a judgment on the taking issue as well as on their substantive due process. Because they could have raised the taking claim but didn't. It's raised in their petition for writ of mandate. They prayed for a judgment that the city's decision on their application affected a regulatory taking of their property. Was it under the California Constitution or under the U.S. Constitution? The petition alleges violation, quote, of the constitutions of the United States and California. So it raised both. Clearly raised both. They cited federal authorities in their briefs in the state court. So that is why, you know, the footnote in MHC is very dispositive on this point. In MHC, they didn't allege a taking in their original action. I'm sorry, they had a taking action and they voluntarily dismissed that claim. But that footnote says the final judgment of the California courts is race judicata on everything not just that they raised but that they could have raised. And if you look at the California Supreme Court in Boken versus Philip Morris, it clearly says that this primary right is determined by the harm suffered, by the particular injury. And in this case, that injury was the denial of its right increase application. Anything that they could have raised for that except compensation, which they could raise in a separate action subsequently if they chose, the decision is race judicata as to everything. And if you look at the allegations in the state court petition for writ of mandate and the federal complaint, they are almost identical, simply theories of relief that are different. And the California Supreme Court clearly says that that does not get you out of the bar of race judicata. And if you look at the California Supreme Court in decision in Kavanaugh, what happened in that case, there was a writ of mandate. You're over time. You may want to sum up. All right. No, I think that particular point on race judicata,  there was a constitutional violation. And so we are going to treat that as race judicata. There was a constitutional violation. So.    Thank you. Thank you. Thank you. Thank you. Thank you. Mr. Alford, you're just about out of time, but I will allow you a minute. Well, I hope you'll indulge me to, first of all, I'd suggest the court look at the in-bank decision in Guggenheim on the question of whether there's a distinct inquiry on a fair return, substantive due process, versus a takings analysis. Yeah, well, let me interrupt your indulgence. You filed a 1094.5 request for a writ of mandate in the court. And counsel just reminded us that in your application, you allege all kinds of causes or problems. The denial of the application denied it a fair return, was unlawful, arbitrary, and capricious, violated the constitutions of the United States and California. And then you have Hensler v. City of Glendale that says you can join all kinds of causes of actions with one of these writs. You did that. You identified the constitution of the United States. And then you didn't appeal. The petition itself included some language, but the briefing and the adjudication of the case did not address anything other than the question. Did you ask them to? I mean, you put it in the petition. No, we did not ask them to do that. Acknowledging that you could have pursued that. Actually, we couldn't have pursued it. That's part of our point. What does Hensler v. City of Glendale say? Hensler v. City of Glendale says that you can, at the same time, pursue a petition for writ of mandamus and a takings claim, or you can pursue your takings claim after. But subsequent to Hensler in Kavanaugh and Galland, what the court says is you have to get an adjudication of your petition for writ of mandamus before you pursue your takings claim. And, in fact, if you look at the Ninth Circuit cases that we cite, they recognize that. They say you can't pursue any kind of a damage claim until you pursue your, quote, Kavanaugh adjustment. Well, your Kavanaugh adjustment is a petition for writ of administrative mandamus. 1094.5. Under 1094.5. And can't you continue that once you've, you can't do both at the same time? No, you can't. That's the point of Galland and Kavanaugh, and that's why Kavanaugh, even in that decision, it says it recognizes it's an exception to the claim-splitting rule that would generally apply that you heard counsel talk about. It says ordinarily, assuming it's the same primary right, which I would dispute, ordinarily you would have to bring them together. But Kavanaugh says, no, we have a special rule here in rent control which says you have to first pursue your Kavanaugh adjustment before you can pursue your damage claims. That's just, that's our point. Now, I know I'm over time, but I want to talk in real terms about what the difference is between a fair return analysis and a takings analysis based on the facts of this case. I think the court appreciates the difference between that counsel. Okay. I think we understand that point. All right, then. Thank you very much for your time. Thank you. Dunnex v. City of Oceanside is submitted, and our final case on the oral argument calendar is Vernon v. City of Santa Barbara.
judges: Duffy, Trott, Bybee